**INSIGNE LLP**
TREVOR Q. CODDINGTON, PH.D. (CSB NO. 243042)
trevorcoddington@sandiegoiplaw.com
CODY R. LEJEUNE (CSB NO. 249242)
codylejeune@sandiegoiplaw.com
CHARLES A. BLAZER, II (CSB NO. 282495)
charlesblazer@sandiegoiplaw.com
701 Palomar Airport Rd., Suite 230
Carlsbad, CA 92011
Telephone: (858) 227-6633
Facsimile: (858) 408-4422

*Attorneys for Plaintiff,*
POWER DENSITY SOLUTIONS LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POWER DENSITY SOLUTIONS LLC, a Delaware limited liability company,<br><br>*Plaintiff,*<br><br>v.<br><br>IBM CORPORATION, a New York corporation, and DOES 1-10, inclusive,<br><br>*Defendants.* | CASE NO.:   3:19-cv-03710<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

## I. INTRODUCTION

Plaintiff Power Density Solutions LLC ("PDS" or "Power Density") accuses Defendant IBM Corporation ("IBM") of patent infringement. In response, IBM filed a motion to dismiss ("Motion") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). *See* Dkt. No. 34. IBM's arguments are either barred from being raised at the pleading stage (28 U.S.C. §1498(a) 1498 relating to the '992 Patent and 35 U.S.C. §286 relating to the '901 Patent) or based on inaccurate legal analysis and distinguishable facts (general jurisdiction relating to the '992 Patent). Accordingly, IBM's Motion fails for numerous reasons.

First, IBM's allegation that 28 U.S.C. §1498(a) requires that PDS file its complaint against the United States in the Court of Federal Claims is misplaced and inapplicable at the pleading stage. Importantly, the Supreme Court has established – and the Federal Circuit has confirmed – that "***section 1498(a) is an affirmative defense rather than a jurisdictional bar***." *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1381 (Fed. Cir. 2002); citing *Sperry Gyroscope Co. v. Arma Eng'g Co.*, 271 U.S. 232, 235–36 (1926). Thus, while IBM can raise §1498(a) as an affirmative defense, IBM cannot use §1498(a) as the basis for dismissing – or transferring – this case. And even if it could, IBM has not presented sufficient evidence to show that PDS' patent infringement claims against IBM belong in the Court of Federal Claims.

Second, IBM's argument that the Court lacks general jurisdiction is misguided, as it relies on inaccurate quotes, incomplete analysis and inapposite case law which concerned a plaintiff's allegation that a foreign corporation defendant's subsidiary in California sufficed to establish general jurisdiction based on an agency theory. IBM, to the contrary, admits that ***one of its four (4) "major campuses in the United States" is located not only in California, but here in this district in Silicon Valley***. Motion, at 2. Dkt. No. 34. Accordingly, though IBM alleges that the infringing activities took place outside of California, that fact is irrelevant when, as here, IBM's contacts with California are "so continuous and systematic" that IBM is essentially at home in California, thus subjecting it to general jurisdiction in California. *See Daimler AG v. Bauman*, 134 S.Ct. 746, 749 (2014); *Helicopteros Nacionales De Colombia v. Hall,* 466 U.S. 408, 414, 104 S. Ct. 1868, 1872 (1984).

Last, the limitation period prescribed in 35 U.S.C. §286 is not jurisdictional and cannot serve as a basis for IBM's claim that the Court lacks general and specific personal jurisdiction over IBM based on §286. *See Hughes Aircraft Co. v. National Semiconductor Corp.,* 850 F. Supp. 828, 832 (N.D.Cal. 1994). Accordingly, IBM cannot use §286 as a means to defeat jurisdiction at the pleading stage.

For at least these reasons, IBM's Motion should be denied. If the Court, however, is compelled to grant IBM's Motion on any ground, PDS respectfully requests the opportunity to amend its complaint.

## II. FACTUAL BACKGROUND

PDS accuses IBM of infringement of Power Density's U.S. Patent No. 6,552,901 ("the '901 patent") and U.S. Patent No. 6,313,992 ("the '992 patent"). PDS alleges that IBM's so-called intra-chip enhanced cooling ("ICECool") technology, including, but not limited to the IBM's z/Architecture mainframe computers utilizing vaporizable dielectric fluid cooling systems as well as IBM's eServer Rear Door Heat eXchanger ("Cool Blue Component") (collectively, the "Accused Products") infringe the '901 and '992 patents. *See* Dkt. No. 32 ("Complaint") at ¶11-12.

IBM's presence both in California and in this District is immense and should not be understated. In this District alone, IBM maintains an office at 425 Market Street, San Francisco, California 94105. In addition, IBM Research-Almaden, located at 650 Harry Road, San Jose, California 95120, is a research lab branch of IBM's research and development division, known as IBM Research that is estimated at over 540,000 square feet and was first announced in 1952. Declaration of Cody R. LeJeune In Support of Plaintiff's Opposition to Motion to Dismiss ("LeJeune Decl."), Ex. 1. This facility has had more than 25,000 workers in this area at various times. LeJeune Decl., Exs. 1-2.

IBM has extensive ties to the state of California, particularly in the Northern District where IBM's state headquarters are located in San Jose, CA. IBM has a public-private partnership with California Department of Technology focused on creating a technology zSystems Apprenticeship Pilot Program. LeJeune Decl., Ex. 3. IBM has developed partnerships to use blockchain to monitor the San Joaquin River Delta in Sacramento to monitor California's drought. LeJeune Decl., Ex. 4. IBM also has a partnership with California to power the state's CalCloud. LeJeune Decl., Ex. 5. California and IBM have a contract to modernize the California DMV website. LeJeune Decl., Ex. 6. IBM has partnerships with counties in the Northern District of California that uses AI to help deal with homelessness and wildfire issues. LeJeune Decl., Ex. 7. IBM also has partnerships with public universities in the Northern District of California, including San Jose State University and University of California Davis to prepare students for knowledge in upcoming technology. LeJeune Decl., Exs. 8-9. IBM has multiple partnerships with Stanford University for Human-Centered Artificial Intelligence and Spintronics Research. LeJeune Decl., Ex. 10. IBM has a partnership with the University of California San Diego to launch an aging-based AI center. LeJeune Decl., Ex. 11. IBM launched a code hackathon to help find technological solutions to California's devastating wildfires. LeJeune Decl., Ex. 12. IBM hosts Data Tech Summits at its Silicon Valley lab in San Jose. LeJeune Decl., Ex. 13. IBM has partnered with local police to use AI to learn where crime is happening in Lancaster, CA. LeJeune Decl., Ex. 14.

Moreover, on June 27, 2008, IBM used its Cool Blue Rear Door Heat eXchanger liquid cooling unit, one of the Accused Products, in a head-to-head vendor "chill off" in a data center in Santa Clara, California. LeJeune Decl., Ex. 15. Most notably, in a news release by IBM on May 10, 2007, IBM suggested a plan for how to combat the energy crisis, including in data centers in California. The press release stated, "In the State of California, IBM will send clients free information on provisioning technology that can reduce energy consumption to help businesses deal with the state's acute energy crisis." In this same statement, IBM stated the method of cooling would be IBM's Cool Blue Rear Door Heat eXchanger "cooling doors". LeJeune Decl., Ex. 16.

## III.  LEGAL STANDARD

Here, the law of the Federal Circuit applies to determine whether the Court has personal jurisdiction over a party in a patent infringement action. *See Nuance Communs., Inc. v. Abbyy Software House,* 626 F.3d 1222, 1230 (Fed. Cir. 2010).

### A.  28 U.S.C. §1498(a) – Court of Federal Claims Jurisdiction

"The Supreme Court has established that section 1498(a) is to be applied, at least with respect to suits to which the United States is not a party, as a codification of a defense and not as a jurisdictional statute." *Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 554 (Fed. Cir. 1990), citing *Sperry Gyroscope*, 271 U.S. at 235-36. "In such litigation between private parties, this court[, the Federal Circuit,] has long complied with Supreme Court precedent holding that section 1498(a) acts as a codification of a defense and not as a jurisdictional statute." *Toxgon*, 312 F.3d at 1381 (quotation omitted), citing *Manville Sales*, 917 F.2d at 554; *Sperry Gyroscope*, 271 U.S. at 235-36.

"In other words, section 1498(a) is an affirmative defense rather than a jurisdictional bar." *Toxogon Corp.,* 312 F.3d at 1381. Further, section 1498(a) does not deprive a district court of jurisdiction. *See Sperry Gyroscope,* 271 U.S. at 271 (whether §1498(a) applies "goes to the merits of the matter, and not merely to the question of jurisdiction").

### B.  General Jurisdiction

A court is said to have general jurisdiction over a defendant when that defendant's "contacts with a forum are 'continuous and systematic,'" and in such case, the defendant "may be subject to jurisdiction even when the cause of action has no relation to those contacts." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355, 1359 (Fed. Cir. 1998) (quoting *Helicopteros Nacionales,* 466 U.S. at 414-16). When a defendant's contacts with a forum are "so continuous and systematic" that it is "essentially at home" in that forum, the defendant is subject to general jurisdiction in that forum. *See Daimler AG,* 134 S.Ct. at 749*; Helicopteros Nacionales,* 104 S. Ct. at 1872.

### C. Specific Jurisdiction

The test for specific jurisdiction examines a defendant's minimum contacts with a forum, i.e., the number and nature of a defendant's contacts with that forum. *Red Wing Shoe Co.,* 148 F.3d at 1359. "In general, when the cause of action at issue 'arises out of or relates to' those contacts, a court may properly assert personal jurisdiction, even if those contacts are 'isolated and sporadic.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985)).

The Federal Circuit "applies a three prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Communs.,* 626 F.3d at 1231.

Importantly, the "Supreme Court advises that the third factor applies only sparingly." *Id.* Further, the Federal Circuit has held that "[w]ithout discovery and a record on jurisdiction, this court must resolve all factual disputes in the plaintiff's favor." *Id.*

### D. 35 U.S.C. §286 – Damages Period Limitation

As it relates to patent cases, "the limitation period prescribed in 35 U.S.C. § 286 is not jurisdictional." *Hughes Aircraft*, 850 F.Supp. 828 at 832 (N.D. Cal. 1994). "It is also clear that section 286 is not a 'defense' in the traditional sense of the word, ***as the statute does not bar a cause of action for infringement***; it merely limits the time frame for which damages can be incurred." *Bradford Co. v. Jefferson Smurfit Corp.*, 2001 WL 35738792, at *9 (Fed. Cir. 2001) (emphasis added), quoting *Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*, 754 F.2d 345, 347 (Fed. Cir. 1985).

## IV. ARGUMENT

### A. This Case Cannot Be Transferred or Dismissed At The Pleading Stage Based on 28 U.S.C. §1498(a)

IBM improperly seeks to dismiss PDS' complaint based on section 1498(a). Indeed, as the Supreme Court has long held, section 1498(a) cannot be used as a jurisdictional statute to dismiss (or transfer) a case between two private parties. *See Toxgon*, 312 F.3d at 1382 ("Since section 1498(a) is an affirmative defense rather than a jurisdictional bar, the district court cannot dismiss this action under Federal Rule of Civil Procedure 12(b)(1). If appropriate, a defense arising under section 1498(a) should be resolved by summary judgment under Rule 56 rather than a motion to dismiss under Rule 12."); *see also Crater Corp. v. Lucent Techs., Inc.*, 255 F.3d 1361, 1364, 1369 (Fed. Cir. 2001), quoting 28 U.S.C. § 1338(a); *Leatherman Tool Group Inc. v. Cooper Indus., Inc.,* 131 F.3d 1011, 1013 (Fed. Cir. 1997) (ruling that a "district court had original jurisdiction over the case by reason of [plaintiff's] patent claims"

because the "district court's dismissal of [plaintiff's] patent infringement claim based upon § 1498(a) could not be a dismissal for lack of jurisdiction").

IBM has not provided any legal authority that supports its position. Importantly, nothing in IBM's Motion authorizes a district court to dismiss a case at the pleading stage under Rule 12 based on section 1498. The case law is clear that IBM cannot rely on section 1498 to have PDS' patent infringement claims against IBM dismissed at the pleading stage based on Rule 12.

Instead of relying on the law (which does not support its position), IBM relies on acknowledgements found in an IBM Research Blog and an IEEE publication.[1] The acknowledgement from the IBM Research Blog includes only a reference to the U.S. Defense Advanced Research Projects Agency ("DARPA") regarding the ICECool Fundamentals Program ("ICECool"), but nothing to indicate that IBM's infringing activities are subject to protection under section 1498. In fact, the acknowledgement itself says that the "project was supported *in part* by DARPA." Motion at 7. The words "in part" from the research blog acknowledgement certainly imply that other entities, other than DARPA and likely IBM itself, contributed to the project. Further, the acknowledgement from the IEEE publication mentions only "technical support and guidance" from DARPA and "support" from some individuals at DOE.

Simply put, even if the law were on IBM's side – which it is not – IBM has not set forth sufficient evidence to show that PDS' patent infringement claims are subject to section 1498.

**B.   The Court Has Both General and Specific Personal Jurisdiction Over IBM**

IBM's continuous and systematic presence throughout California and in this District clearly shows that this Court has general jurisdiction over IBM. Further, IBM's significant contacts in California, and specifically this District, confirm that the Court has specific jurisdiction over IBM.

**1.   IBM's Continuous and Systematic Contacts in this Forum Satisfy the General Jurisdiction Requirements**

IBM's presence in California is so "continuous and systematic" that IBM is essentially "at home" in California. *See Daimler AG,* 134 S.Ct. at 749. IBM maintains several major facilities in California and

---

[1] PDS propounded discovery requests on IBM that requested information concerning contracts with DARPA for the ICECool program, but IBM's responses were grossly deficient. IBM did not even include a client declaration regarding its claims that all activities regarding ICECool were performed solely for the U.S. government. It has supplied only attorney argument in the Motion. PDS is in the process of meeting and conferring with IBM regarding IBM's discovery deficiencies, but neither PDS nor this Court have sufficient information to confirm that the claims relating to the '992 Patent are solely governed by section 1498.

specifically in this District. The facilities are not owned by an affiliate of IBM's, or a subsidiary – in contrast to the facts in IBM's heavily relied-upon *Daimler* case. *Id.* Instead, and as IBM has itself confirmed, the IBM Research-Almaden campus, one of the facilities owned and operated by IBM, is considered – by IBM itself as set forth in its Motion – to be one of IBM's four (4) major campuses in the United States. *See* Motion at 2.

IBM maintains an office at 425 Market Street, San Francisco, California 94105. In addition, IBM Research-Almaden, located at 650 Harry Road, San Jose, California 95120, is a research lab branch of IBM's research and development division, known as IBM Research that is estimated at over 540,000 square feet and was first announced in 1952. LeJeune Decl., Ex. 1. This facility has had more than 25,000 workers in this area at various times. LeJeune Decl., Ex. 1-2. IBM's relationship with the state of California itself is well-documented, as highlighted in the examples above. *See supra* Part II (Factual Background); LeJeune Decl., Exs. 1-16.

Further, IBM is registered to do business in California and has continuously maintained its status as a corporation that regularly transacts business within California since 1934.[2] IBM would only have to register with the California Secretary of State if it "transact[s] intrastate business" by "entering into repeated and successive transactions of its business in this state, other than interstate or foreign commerce." Cal. Corp. Code § 191. Notably, IBM would not have to maintain its registration if it only "effect[ed] sales through independent contractors," or "solicit[ed] or procur[ed] orders." Cal. Corp. Code § 191(c)(5)-(6).

Accordingly, IBM's presence in California constitutes the required "continuous and systematic" contact with California. *See Red Wing Shoe Co.,* 148 F.3d at 1359.

Therefore, because IBM maintains such continuous and systematic contacts with California, IBM's contentions that the Accused Products are not manufactured, developed or sold at this facility is irrelevant. *See id.*, quoting *Helicopteros,* 466 U.S. at 414-16 ("***a defendant whose contacts with a forum are 'continuous and systematic' may be subject to jurisdiction even when the cause of action has no relation to those contacts***.") (emphasis added).

### 2. IBM's Reliance On *Daimler* is Misleading

IBM goes to great lengths to compare the facts here to those of *Daimler. Daimler* did not in fact hold that a corporation is subject to general personal jurisdiction only where it is incorporated and where

---

[2] IBM's entity details can be found at https://businesssearch.sos.ca.gov/CBS/Detail, last retrieved on January 21, 2020.

it has its principal place of business. Instead, *Daimler* concerned a plaintiff's allegation that a foreign corporation defendant's subsidiary in California sufficed to establish general jurisdiction based on an agency theory. *See Daimler AG,* 134 S.Ct. at 749. The case was predicated on the California contacts of a Daimler subsidiary in the United States, Mercedes Benz, that distributed automobiles in California. *Id. Daimler*, in clarifying *Goodyear v. Brown,* did not hold that a corporation is subject to general jurisdiction only in a forum where it is incorporated or has its principal place of business. *Id.* citing *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U. S. 915 (2011). Rather, the court in *Daimler* cited those places as examples of all-purpose forums. *Id. Daimler* then reiterated that general jurisdiction is found where a corporation's affiliations with the state are so continuous and systematic as to render it essentially "at home" in the forum state. *Id.*

IBM also incorrectly alleges that *Daimler* holds that general jurisdiction would only be appropriate where the magnitude of a corporation's business activities in the forum state substantially exceeds the magnitude of the corporation's activities in other places. Motion at 9, n.5. *Daimler* says nothing of the sort, nor would such a rule make sense. The activities of a ubiquitous nationwide corporation in a single state will always be exceeded by the total magnitude of its activities elsewhere.

Here, unlike in *Daimler*, PDS does not rely on a subsidiary or agency theory to establish general jurisdiction. IBM admits to having one of its four (4) major United States located in this jurisdiction and specifically in this district. Thus, this Court has general jurisdiction over IBM.

### 3. IBM Is Also Subject to Specific Jurisdiction[3]

In addition to IBM's contacts with the forum that it alleges do not relate to the accused technology, IBM has also availed itself of the benefits of this forum by engaging with contacts in the forum that directly relate to the Accused Products. IBM is thus subject to specific jurisdiction as well as general jurisdiction.

"In the ordinary patent infringement suit, the claim asserted by the patentee plaintiff is that some act of making, using, offering to sell, selling, or importing products or services by the defendant constitutes an infringement of the presumptively valid patent named in suit." *Avocent Huntsville Corp. v. Aten Int'l Co.,* 552 F.3d 1324, 1332 (Fed. Cir. 2008). "Thus, for purposes of specific jurisdiction, the jurisdictional inquiry is relatively easily discerned from the nature and extent of the commercialization of the accused

---

[3] IBM only asserts that it is not subject to specific jurisdiction regarding PDS' cause of action for infringement of the '992 Patent. IBM does not contest that it is subject to specific jurisdiction regarding the causes of action for infringement of the '901 Patent.

products or services by the defendant in the forum." *Id.* "In such litigation, the claim both 'arises out of' and 'relates to' the defendant's alleged manufacturing, using, or selling of the claimed invention." *Id.*

Indeed, IBM's contacts with California confirm that IBM has a presence, and has commercialized the accused technology, in California and this District and thus satisfies the minimum contacts requirement for specific jurisdiction.

More specifically, IBM's contacts with California satisfy all three prongs of the jurisdictional test set forth by the Federal Circuit. To determine whether specific jurisdiction exists, the "Federal Circuit applies a three prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *E.g., id.* at 1231. By undertaking the activities outlined above, IBM has purposefully directed activities at residents of the forum, thus satisfying the first prong. PDS' infringement claims arise out of those activities, as IBM is supplying the accused technology across the state of California, which satisfies the second prong.

In addition, assertion of personal jurisdiction over IBM in California and this District is certainly reasonable and fair. IBM's presence in California is so large that it should have no problem defending itself in the jurisdiction in which it has supplied the accused products and technology. Indeed, IBM has "availed [itself] of the privilege of conducting business [here] and because [its] activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require [IBM] to submit to the burdens of litigation in [this] forum as well." *Burger King,* 105 S. Ct. at 2184.

Finally, while IBM is correct that to **prove** infringement of a method patent a plaintiff must show that every step of the method is performed in the claimed order, "nothing in *Twombly* or *Iqbal* demands this level of factual specificity at the pleading stage." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1342 (Fed. Cir. 2012) citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Indeed, "[s]uch a requirement would be dangerously close to requiring a plaintiff to prove he is entitled to relief at the pleading stage." *Id.*

### C. PDS' Complaint States a Claim for Infringement of the '901 Patent

PDS' claims of infringement relating to the '901 Patent are sufficient to withstand IBM's Rule 12(b)(6) attacks. IBM's arguments are flawed for several reasons.

#### 1. Damages Are Not Relevant at The Pleading Stage

First, the limitation period prescribed in 35 U.S.C. §286 is not jurisdictional and cannot serve as a basis for IBM's claim that the Court lacks general and specific personal jurisdiction over IBM. *See Hughes Aircraft,* 850 F. Supp. at 832. Indeed, "the limitation period prescribed in 35 U.S.C. § 286 is not

jurisdictional." *Id*. "It is also clear that section 286 is not a 'defense' in the traditional sense of the word, **as the statute does not bar a cause of action for infringement**; it merely limits the time frame for which damages can be incurred." *Bradford*, 2001 WL 35738792, at *9 (emphasis added). Importantly, "the only effect § 286 has is to prevent any recovery ... for any infringement committed more than six years prior to the filing of the complaint." *Standard Oil,* 754 F.2d at 347-48 (internal quotations omitted).

IBM's attacks on the Complaint that relate to section 286 are not relevant here at the pleading stage, and therefore PDS' claims must survive.

### 2. PDS' Allegations and Claim Chart Satisfy Rule 12

Second, PDS's allegations and claim chart included with the Complaint satisfy Rule 12. A plaintiff alleging patent infringement is not required to use an element by element analysis, but instead can include allegations in the complaint that "largely track[] the language of the claims." *Avago Techs. Gen. IP (Singapore) PTE Ltd. v. Asustek Computer, Inc.,* 2016 WL 1623920, at *4 (N.D. Cal. Apr. 25, 2016). This suffices under the *Twombly-Iqbal* standard. *Id.* This District Court has noted that "nothing about *Twombly* and *Iqbal* suggests that a patent infringement complaint that largely tracks the language of the claims to allege infringement is insufficient per se," and that such allegations are sufficiently specific to provide notice to a defendant. *Id.* Accordingly, the Northern District of California "generally has not required detailed infringement theories until the time that infringement contentions are served, which is typically several months after a complaint has been filed." *Id.*; *see* Northern District of California Local Patent Rules, Rule 3-1 (Disclosure of Asserted Claims and Infringement Contentions).

PDS identified IBM's products that infringe the '901 Complaint by stating that "IBM is has been making, using, selling, offering for sale, importing, and/or exporting products that infringe the '901 patent including without limitation IBM's z/Architecture mainframe computers utilize vaporizable dielectric fluid cooling systems as well as IBM's sServer Rear Door Heat eXchanger." Complaint, at ¶12. In addition, PDS provided a claim chart for one of the versions of the z/Architecture versions – the zSeries 900 – as being representative of the zArchitecture series. At the pleading stage, PDS is not required to do more. *See In re Bill of Lading,* 681 F.3d at 1342 quoting *Iqbal,* 556 U.S. at 678 ("At this stage of the litigation a plaintiff is only required to plead enough facts to enable a court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Thus, PDS has satisfied its burden under Rule 12, *Twombly*, *Iqbal*, and this District's Patent Local Rules, and therefore PDS' claims must proceed.

Finally, as set forth above, IBM's reliance on section 286 regarding damages is but a red herring. Accordingly, PDS' allegations in the Complaint meet the pleading standard required by law.

9
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
3:19-cv-03710

### D. The Complaint Properly Pleads Direct and Indirect Infringement

To state a claim for inducement of infringement, plaintiff must show that (1) there has been direct infringement, and (2) the alleged infringer knowingly induced infringement and possessed the specific intent to encourage another's infringement. *Winn, Inc. v. Eaton Corp.,* 272 F. Supp 2d 968, 974-75 (C.D. Cal. 2003). The specific intent for inducing infringement relates to the *acts* themselves and not for the ultimate infringement. *See Hewlett-Packard Co. v. Bausch & Lomb Inc.,* 909 F.2d 1464, 1469 (Fed. Cir. 1990) ("we are of the opinion that proof of the actual intent to cause the acts which constitute the infringement is the necessary prerequisite to finding active inducement.").

The Complaint clearly pleads numerous facts that, taken as true, show that induced infringement is plausible. *See Proxyconn Inc. v. Microsoft Corp.,* 2012 WL 1835680, at *6 (C.D. Cal. 2012) (citing *Groupon Inc. v. MobGob LLC,* 2011 WL 2111986 (N.D. Ill. 2011) (noting that a complaint properly alleges induced infringement where it alleges actual knowledge without specifying when it was acquired "because a motion to dismiss requires all inferences to drawn in the plaintiff's favor."). For example, the Complaint pleads there has been direct infringement. *See* Complaint at ¶¶ 9-12, 15-17, 24-26. Further, the Complaint clearly alleges that IBM intended its customers and users to participate in infringing activities when they use the infringing products. *Id* at ¶¶ 13, 18, 27. Accordingly, PDS has adequately stated claims for both direct and indirect infringement.

## V. CONCLUSION

Based on the foregoing, IBM's Motion should be denied in its entirety. If the Court is inclined to grant any part of this Motion, PDS requests the opportunity to amend its Complaint.

Dated: January 24, 2020                           INSIGNE LLP

                                       By:   /s/Cody R. LeJeune
                                                  Trevor Q. Coddington, Ph.D.
                                                  Cody R. LeJeune
                                                  Charles R. Blazer, II
                                                  701 Palomar Airport Rd., Suite 230
                                                  Carlsbad, CA 92011
                                                  Phone: (858) 227-6633
                                                  Fax: (858) 405-4422

                                                  *Attorneys for Plaintiff*,
                                                  POWER DENSITY SOLUTIONS LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2020, I caused a copy of the foregoing

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

and attachments thereto to be served *via* the Court's CM/ECF system to counsel for all parties and their counsel of record, who are deemed to have consented to electronic service using the Court's CM/ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: January 24, 2020                              INSIGNE LLP

By:   */s/*Cody R. LeJeune
Trevor Q. Coddington, Ph.D.
Cody R. LeJeune
Charles R. Blazer, II
703 Palomar Airport Rd., Suite 210
Carlsbad, CA 92011
Phone: (858) 227-6633
Fax: (858) 405-4422

*Attorneys for Plaintiff*,
POWER DENSITY SOLUTIONS LLC